FILED

2021 Aug-30  PM 01:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **MICHAEL PRUITT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action Number |
| **v.** | ) | **4:20-cv-00436-AKK** |
| | ) | |
| **KILOLO KIJAKAZI, Acting** | ) | |
| **Commissioner of Social Security,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## **MEMORANDUM OPINION**

Michael Pruitt brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration. Pruitt contends among other things that the Administrative Law Judge ("ALJ") failed to properly weigh the opinions of treating and examining physicians and that the Appeals Council improperly refused to consider new evidence and grant review. Doc. 10. The court finds that the ALJ applied the correct legal standards and substantial evidence supports her decision, and the Appeals Council did not err by declining to grant review. Therefore, the ALJ's decision is due to be affirmed.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, she is substituted for Andrew Saul as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I.

Pruitt worked as a truck driver, bus driver, and equipment operator before the onset of his alleged disability on April 28, 2017.  R. 218, 229, 244, 260, 293-99, 334.  In June 2017, Pruitt filed an application for supplemental security income based on his alleged disability caused by injuries he sustained in a catastrophic car accident in June 2012, kidney stones, scoliosis, memory loss, severe anxiety, continuing pain from gunshot wounds to leg and foot, bowel blockage, and blood clots.  R. 110-11, 218-23.  After the SSA denied his application, R. 152, Pruitt requested a hearing before an ALJ, R. 159.  The ALJ subsequently issued a decision denying Pruitt's claim, R. 47-61, and the Appeals Counsel denied review, R. 1, rendering the ALJ's decision the final decision of the Commissioner.  Pruitt then filed this action for judicial review under 42 U.S.C. § 405(g).  Doc. 1.

## II.

This court is tasked to review whether the record contains substantial evidence to sustain the decision of the ALJ and whether the ALJ applied the correct legal standards.  *See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  On appeal, the court will "review *de novo* the legal principles upon which the ALJ's decision is based."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

The ALJ's factual "findings are conclusive if they are supported by substantial evidence." 42 U.S.C. § 405(g). Substantial evidence "is 'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). If substantial evidence supports the ALJ's factual findings, then the court is required to affirm, even if the evidence preponderates against her findings. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This court's review should not "include deciding facts anew, making credibility determinations, or re-weighing the evidence." *Moore*, 405 F.3d at 1211. But, despite the limited scope of judicial review, "this does not yield automatic affirmance." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable psychological

abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five-step analysis. 20 C.F.R. § 404.1520. Specifically, the Commissioner must determine in sequence:

(1)  whether the claimant is currently unemployed;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals one listed by the Secretary;

(4)  whether the claimant is unable to perform his or her past work; and

(5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work, the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

## IV.

Here, the ALJ found at Step One that Pruitt had not engaged in any substantial gainful activity since his alleged onset date. R. 52. At Step Two, the ALJ determined that Pruitt has the severe impairments of lumbar spondylosis and

depression.  R. 53.  At Step Three the ALJ determined Pruitt did not meet the requirements of any of the listed impairments.  *Id.*  Instead, the ALJ found Pruitt had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> no more than frequently operating foot controls with right lower extremity; occasional climbing stairs; never climbing ladders, ropes, or scaffolds; avoid concentrated exposure to extreme cold; avoid all exposure to excessive vibration, unprotected heights, and hazardous machinery; avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, gases, poorly ventilated areas, and a chemical environment; avoid all extreme heat and extreme humidity; limited to unskilled work with no more than occasional workplace changes, the ability to make simple work related decisions, and the ability to attend and concentrate for two hour periods.

R. 56.  Proceeding to Step Four, and relying on the testimony of a vocational expert, the ALJ found that Pruitt was unable to perform any past relevant work.  R. 59.  Finally, based on Pruitt's RFC and vocational profile and the vocational expert's testimony, the ALJ found that Pruitt could perform work in the national economy, including as a block inspector, marker, and a folding machine operator.  R. 60.  Therefore, the ALJ concluded that Pruitt had not been disabled from the alleged onset date through the date of the ALJ's decision.  R. 61.

## V.

Pruitt contends that (1) the ALJ failed to properly weigh the opinions of a treating physician, consulting physician, and consulting psychologist; (2) his failed worked attempt after the alleged onset date does not preclude a finding of disability;

(3) the Appeals Council failed to consider new, material, and chronologically relevant evidence; and (4) substantial evidence does not support the ALJ's decision. Doc. 10.  The court considers these contentions in turn.

## A.

For claims filed on or after March 27, 2017, such as Pruitt's claims, the Social Security Administration has amended its regulations to remove the treating source rule, which provided that a treating physician's opinion was entitled to substantial weight unless good cause is shown to the contrary.[2]  *See* 82 Fed. Reg. 5844-01 at 5853 (Jan. 18, 2017); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (explaining the treating source rule).  Instead, under the new regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [a claimant's] medical sources[,]" and "will articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions . . . the [the claimant's] case record."  20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).  When evaluating the persuasiveness

---

[2] The Social Security Administration chose not to retain the treating source rule in its new regulations in large part because of fundamental changes in health care delivery.  82 Fed. Reg. 5844-01 at 5853-54.  The new regulations are entitled to *Chevron* deference from courts, even if they conflict with prior binding precedent, unless the prior precedent holds "that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill[.]"  *Nat'l Cable & Telecomm'ns Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982-83 (2005).  Here, Pruitt has not offered any arguments that the Administration's new regulations regarding the evaluation of medical opinion evidence are not entitled to *Chevron* deference.  *See* docs. 10; 15.

of the opinions, the ALJ considers the following five factors:  (1) supportability, i.e., how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[;]" (2) consistency with the evidence; (3) relationship with the claimant, including the nature of the relationship, the length of the treatment relationship, the frequency of examinations, and the extent of the treatment relationship; (4) specialization; and (5) "[o]ther factors," such as the medical source's familiarity with the agency's policies and the evidence in the claim.  *Id.* at §§ 404.1520c(c); 416.920c(c). Supportability and consistency are the most important of the five factors, and an ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions . . . in [her] decision."  *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may explain how she considered the remaining factors, but she is not required to do so.  *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 1.

With the relevant regulations in mind, the court turns now to Pruitt's contentions that the ALJ failed to properly weigh the opinions of examining medical personnel.  The court begins by addressing the two medical opinions related to Pruitt's mental status.  First, Dr. Samuel E. Fleming, Ph.D., a consulting psychologist, performed a comprehensive mental status examination of Pruitt on

August 16, 2017, and he opined in part that Pruitt had major neurocognitive disorder due to a traumatic brain injury and would have difficulty remembering instructions. R. 863-66.   Second, Dr. Larry Scarborough, one of Pruitt's treating physicians, completed a mental health source statement in March 2019 in which he opined, among other things, that Pruitt cannot "maintain attention, concentration and/or pace for periods of at least two hours" or "adjust to routine and infrequent work changes[.]"[3]   R. 1231-32.   Dr. Scarborough further opined that Pruitt would be off task ten percent of the time in an eight-hour workday and would miss two days of work per month due to his psychological symptoms.   *Id.*

The ALJ considered Dr. Scarborough's and Dr. Fleming's opinions, but found them inconsistent with the medical records as a whole and with more recent evidence. R. 58-59.   Pruitt argues in part that the ALJ erred because she failed to show good cause to discount the opinions, and she should not have given more weight to a non-treating, non-examining physician.   Doc. 10 at 32-45.   But, this argument is unavailing because Pruitt fails to address new and relevant regulations governing how an ALJ should consider medical evidence.   *See* docs. 10; 15; *see also* 20 C.F.R. §§ 404.1520c, 416.920c.   As for Pruitt's contention that Dr.

---

[3] Dr. Scarborough opined that Pruitt could "understand, remember or carry out very short and simple instructions[,]" "perform activities within a schedule and be punctual within customary tolerances[,]" "sustain an ordinary routine without special supervision[,]" "interact with supervisors [and coworkers]," and "maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness."   R. 1231-32.

Scarborough's opinions find support from his treatment records at Quality of Life, doc. 10 at 32, the issue before the court is whether substantial evidence supports the ALJ's decision, not whether evidence may support a contrary decision, *see Martin*, 894 F.2d at 1529.   As discussed below, substantial evidence supports the ALJ's finding that Dr. Scarborough's and Dr. Flemings's opinions were inconsistent with the overall record.

To begin, as the ALJ noted, Pruitt sought treatment from the emergency department at Floyd Medical Center on June 30, 2017 for right foot pain after a fall, on May 13, 2018 for insomnia, and on October 25-26, 2018 for chest pain due to opiate withdrawal.   R. 58, 745-77, 1125, 1154.   During each of those visits, physicians noted that Pruitt had no neurological symptoms or focal neurological deficit upon examination; was calm, cooperative, alert, and oriented; could follow simple instructions; and verbalized understanding of the physicians' instructions. R. 745, 748, 757, 774-75, 814, 816, 819, 828, 846, 114, 1123, 1125, 1158, 1163. And, in May 2018 when he sought treatment for insomnia, Pruitt denied any other mental health symptoms.   R. 1160.   Next, as the Commissioner notes, Dr. Scarborough's opinions are inconsistent with his own treatment records.   *See* doc. 14 at 25.  Pruitt sought treatment for musculoskeletal pain from Dr. Scarborough at Quality of Life Health Services from September 2017 through December 2018.   R. 1165-1230.  Records from each of those visits show that Dr. Scarborough observed

that Pruitt had normal psychiatric findings on exam and was oriented to time, place, person, and situation.  *See* R. 1169, 1170, 1176, 1182, 1196, 1204, 1211, 1218.  In addition, notes from Pruitt's first visit in September 2017 reflect that he verbalized an understanding of information presented to him.  R. 1170.

As the ALJ found, Dr. Fleming's and Dr. Scarborough's opinions regarding Pruitt's mental limitations also were inconsistent with Pruitt's reported daily activities and "the fact that [Pruitt] worked . . . subsequent to [Dr. Fleming's] evaluation."[4]  R. 58-59.  Indeed, Pruitt reported that he was able to help care for his child every second week, care for his dogs, pay bills, handle a savings and checking account, and count change.  R. 54, 283, 285.  In addition, as the ALJ discussed, Dr. Kristin Bailey, a state agency psychiatric consultant, reviewed Pruitt's medical records and opined that Pruitt had moderate limitations in his ability to understand and remember detailed instructions, but could understand, remember, and complete simple one to two-step tasks.  R. 125.  Dr. Bailey also opined that Pruitt "should be able to concentrate and attend to familiar tasks for extended periods" with "all customary rests and breaks."  R. 125.  This evidence, coupled with the medical evidence discussed above, provides substantial evidence to support the ALJ's assessment of Dr. Scarborough's and Dr. Fleming's opinions.

---

[4] The ALJ erroneously stated that Pruitt worked as a truck driver subsequent to Dr. Fleming's evaluation.  R. 58.  Pruitt in fact worked at a Styrofoam plant in 2018.  R. 73.

2.

Turning to medical opinions related to Pruitt's physical limitations, Dr. Ronald Borlaza, a consulting physician, conducted a physical examination of Pruitt on July 29, 2017, and he opined that Pruitt could stand or walk for less than two hours, sit for a maximum of four hours, and could only rarely climb steps/stairs, stoop, kneel, crouch, or crawl due to chronic low back pain, abdominal pain, right foot pain, and dyspnea.  R. 856-61.  The ALJ considered those opinions, but found they are not persuasive because they are "inconsistent with the medical records as a whole and the evidence received subsequent to [Dr. Borlaza's] determination[.]" R. 59.  The ALJ also noted that "Dr. Borlaza's opinion is based primarily on [Pruitt's] reported pain and not objective medical evidence."  *Id.*  Substantial evidence supports the ALJ's finding.

As the ALJ noted, although Dr. Borlaza observed that Pruitt walked with difficulty due to reported abdominal, low back, leg, and right foot pain, Pruitt had negative straight leg testing in the seating and supine positions upon examination. R. 857-59.  Next, as discussed above, Pruitt received treatment from the emergency department at Floyd Medical Center on June 30, 2017 for right foot pain that he described as chronic following a gunshot wound in 2012 and that had gotten worse after a fall.  R. 771.  During that visit, Pruitt denied any other complaints or injuries, and an examination and x-ray revealed evidence of the prior gunshot wound with

metallic ballistic fragments but no acute abnormality.  R. 771, 827-28, 846, 848.  A physician at Floyd diagnosed Pruitt with an ankle sprain, and Pruitt indicated no distress or complaints at discharge.  R. 827-28, 841-42, 846, 848.

Approximately two months later, Pruitt had x-rays of his cervical spine and lumbar spine due to neck and low back pain that revealed normal alignment of the cervical spine with no fracture, subluxation or prevertebral soft tissue swelling, and only mild degenerative disease at C5-C7.  R. 868.  The lumbar spine x-ray also revealed normal alignment, chronic bilateral L5 spondylolysis without anterolisthesis, and well-preserved lumbar vertebral body and disc space heights.  R. 869.  Pruitt subsequently sought treatment from the emergency department at Floyd Medical Center in May 2018 for insomnia and in October 2018 for chest pain and withdrawal from Percocet.  R. 1089, 1114, 1120, 1160.  During those visits, Pruitt reported no shortness of breath or joint pain, and upon physical examination, physicians observed that Pruitt had clear lungs, non-labored breathing, and normal range of motion in his back and musculoskeletal system.  R. 1120, 1123, 1160, 1163.

The ALJ also noted that Pruitt's reported activities were inconsistent with Dr. Borlaza's opinions.  R. 57.  Pruitt reported that he can cook meals, help with laundry and dishes, help with grocery shopping about once a month for an hour.  R. 90, 92, 283-85.  In addition, in May 2018, Pruitt reported to a sheriff's deputy that his

medication and some money was stolen from his truck while he and a friend had been fishing for about three to four hours.  R. 341.  And, at the hearing Pruitt did not use a cane to walk or stand.  R. 58.  Based on this evidence and the medical records, substantial evidence supports the ALJ's evaluation of Dr. Borlaza's opinions.

*      *      *

To summarize, the record shows that Pruitt has been suffering from pain and depression for years.  Nevertheless, the ALJ applied the correct legal standards in evaluating the opinions of Dr. Scarborough, Dr. Fleming, and Dr. Barboza, and substantial evidence supports her finding that the opinions were inconsistent with the medical records as a whole and were not persuasive.  As a result, Pruitt has not shown that the ALJ erred in her consideration of the medical opinion evidence.

## B.

Pruitt next contends that the ALJ denied benefits based on his failed work attempt, and he asserts that his attempt to work does not preclude a finding of disability.  Doc. 10 at 45-47.  Pruitt correctly notes that the ALJ found Dr. Fleming's opinion that Pruitt had a neurocognitive disorder and difficult remembering was not persuasive in part because Pruitt worked after Dr. Fleming rendered his opinions.  *See* R. 58.  Still, the ALJ did not base her decision denying benefits on Pruitt's attempt to work.  In fact, the ALJ found that Pruitt had not engaged in substantial

gainful activity since his alleged onset date, and described Pruitt's subsequent work attempt as "unsuccessful." R. 52-53. And, Pruitt has not cited any authority to suggest that the ALJ could not consider his unsuccessful work attempt when evaluating medical opinion evidence. *See* docs. 10; 15. Consequently, Pruitt has not shown that the ALJ erred in her consideration of Pruitt's attempt to work after his alleged onset date.

## C.

Pruitt also argues that the Appeals Council erred by refusing to review evidence he submitted on appeal. Doc. 10 at 26-28. In general, a claimant may present new evidence in support of his application at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.900(b)). Thus, a claimant may present new evidence to the Appeals Council, and the Council "'must consider new, material, and chronologically relevant evidence' that the claimant submits." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram*, 496 F.3d at 1261). "Evidence is material if a reasonable possibility exists that the evidence would change the administrative result," *Hargress v. Soc. Sec. Admin, Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (citing *Washington*, 806 F.3d at 1320), and evidence is chronologically relevant when it "relates to the period on or before the date of the [ALJ's] decision . . . ," 20 C.F.R. § 404.970(a)(5). "[W]hether

evidence meets the new, material, and chronologically relevant standard 'is a question of law subject to [] de novo review.'" *Washington*, 806 F.3d at 1321 (quotation omitted).  Finally, "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

At issue here is a psychological evaluation conducted by Dr. June Nichols, Psy. D. more than four months after the ALJ's decision, and a mental health source statement Dr. Nichols completed following her evaluation of Pruitt.  *See* R. 11-16. In connection with her evaluation, Dr. Nichols reviewed and summarized the September 6, 2017 evaluation by Dr. Fleming and the March 12, 2019 mental health source statement from Dr. Scarborough, and she notes in her evaluation that Pruitt was "[a]ssessed by Quality of Life Health Services, Cherokee Pain Management, [and] Floyd Medical Center."  R. 12.  Dr. Nichols also questioned Pruitt about his history of illness and his present illness during the evaluation.  *See* R. 12-14.  Based on her review of the medical records, Pruitt's reports, and a mental status examination, Dr. Nichols opined among other things that Pruitt "is likely unable at this time to deal with normal pressures in a competitive work setting as his anxiety and problems with panic attacks have escalated over time."  R. 15-16.  Dr. Nichols also opined that Pruitt would be off task thirty percent in an eight-hour workday,

would miss two to four days of work per month due to psychological symptoms, and that Pruitt's limitations existed back to his alleged onset date.  R. 11.

### 1.

The Appeals Council found that Dr. Nichols's evaluation and opinions "do[] not relate the period at issue" and, therefore, "do[] not affect the decision about whether [Pruitt was] disabled . . . ."[5]  R. 2. Pruitt challenges the Appeals Council's finding, and he relies on *Washington v. Social Security Administration, Commissioner*, 806 F.3d 1317 (11th Cir. 2015), to support his contention that Dr. Nichols's report is chronologically relevant.  Doc. 10 at 27-28.  In *Washington*, a psychologist examined Cornelius Washington several months after an ALJ issued an unfavorable decision, Washington submitted the psychologist's evaluation and opinions to the Appeals Council, and the Council denied review.  806 F.3d at 1319-20, 1322.  Washington argued on appeal that the Appeals Council erred by refusing to consider the psychologist's opinions that Washington had extreme limitations due to the impact of hallucinations and limited cognitive abilities.  *Id.* at 1320.  In considering that argument, the Eleventh Circuit noted that "medical opinions based

---

[5] The Appeals Council did not refuse to consider Dr. Nichols's evaluation as Pruitt contends. Rather, the Appeals Council considered the evaluation and opinions and found that they were not chronologically relevant.  *See* R. 2.  The "Council was not required to give a more detailed explanation or to address each piece of new evidence individually," and the Eleventh Circuit has found that a similar statement that the claimant's new evidence is "'about a later time'" is sufficient to show that the Appeals Council considered the evidence.  *Hargress*, 883 F.3d at 1309 (citation omitted).

on treatment [or an evaluation] occurring after the date of the ALJ's decision may be chronologically relevant" if they relate back to the time before the ALJ's decision. *Washington*, 806 F.3d at 1323 (citation omitted). The Circuit then held that the opinions at issue were chronologically relevant because (1) they were based on, among other things, medical records from the period before the ALJ's decision and the claimant's reports about his symptoms during the relevant time; and (2) there was no evidence that the claimant's cognitive abilities may have "declined in the period following the ALJ's decision." *Id.* As a result, because the opinions were also new and material, the Circuit found that the Appeals Council committed a legal error when it refused to consider them, and it remanded the case to the district court with instructions to return the case to the Commissioner for further consideration. *Id.*

In an unpublished opinion, the Eleventh Circuit relied on *Washington* to hold that the Appeals Council erred by finding that a psychologist's opinions about a claimant's mental status were not chronologically relevant. *Hunter v. Soc. Sec. Admin, Comm'r*, 705 F. App'x 936, 939-41 (11th Cir. 2017). The Circuit concluded that, even though the psychologist did not evaluate the claimant until four months after an ALJ issued an unfavorable decision, his opinions related back to the relevant time before the ALJ's decision. *Id.* at 940. In reaching that conclusion, the Circuit considered that the psychologist reviewed medical records from the

period before the ALJ's decision and considered the claimant's statements about his symptoms during the relevant time, and the Circuit noted that the opinions at issue contained "an 'explicit statement that the psychologist's opinions related back to the date of the ALJ's decision'" *Id.* (quoting *Washington*, 806 F.3d at 1322) (alteration in original omitted).

Similar to the medical opinions in *Washington* and *Hunter*, Dr. Nichols's opinions in this case are based on a review of medical records from the relevant time before the ALJ issued her decision and Pruitt's statements regarding his condition and symptoms during that time, including Pruitt's report of problems with his memory. *See* R. 12-14. Moreover, in the mental health source statement she completed, Dr. Nichols's opined that Pruitt's limitations existed back to the alleged onset date. R. 11. Accordingly, Dr. Nichols's opinions relate back to the relevant time and are, therefore, chronologically relevant.

The Commissioner attempts to avoid that conclusion by arguing that Dr. Nichols did not provide a detailed summary of Pruitt's prior medical records.[6] Doc. 14 at 9-10; *see also* R. 12. But, the Eleventh Circuit's discussion of the evidence at

---

[6] The Commissioner also contends that Dr. Nichols's opinions are not chronologically relevant because they are based on Pruitt's reported symptoms rather than on the objective medical records. Doc. 14 at 9. But, Dr. Nichols's evaluation notes indicate that Pruitt described symptoms he experienced during the relevant time, *see* R. 13, and as noted above, the opinions the Eleventh Circuit found to be relevant in *Washington* and *Hunter* were based in part on the claimants' subjective statements regarding their symptoms during the relevant time, *Washington*, 806 F.3d at 1323; *Hunter*, 705 F. App'x at 940.

issue in *Washington* does not indicate that the psychologist provided a detailed summary of the prior medical records he reviewed.  *See* 803 F.3d at 1319-22. Likewise, there is no indication that the evaluation the Eleventh Circuit found chronologically relevant in *Hunter* contained a detailed description of the prior medical records the psychologist considered.  *See* 705 F. App'x at 938-41. Moreover, this case is distinguishable from each of the three cases the Commissioner cites to support her argument that Dr. Nichols's opinions are not chronologically relevant because, unlike in those cases, the opinions at issue here are based at least in part on medical records from the period before the ALJ's decision.[7]  *See* doc. 8-3 at 13.  Thus, the Appeals Council erred by finding that the opinions were not chronologically relevant.  *See Washington*, 806 F.3d at 1323; *Hunter*, 705 F. App'x at 939-41.

---

[7] *See Hargress*, 883 F.3d at 1309 (finding that new medical records submitted to the Appeals Council were not chronologically relevant because they "primarily consisted of the[] medical providers' progress notes for Hargress's treatment for her low back pain and diabetes" in the eight months following the ALJ's unfavorable decision); *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 860, 864 (11th Cir. 2017) (noting that a treating physician's opinion submitted to the Appeals Council and dated after the ALJ's decision gave no indication whether it was based on two appointments that occurred during the relevant time or on an appointment that occurred after the ALJ rendered her decision); *Green v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 516, 520 (11th Cir. 2017) (finding that a physician's opinion contained in treating notes dated after the ALJ's decision was not chronologically relevant when the physician did not specify that his opinion applied to the time period before the ALJ's decision and there was no indication that the opinion was based on a review of past medical records).

2.

The Commissioner argues alternatively that the Appeals Council did not err by denying review because Dr. Nichols's opinions would not have changed the ALJ's decision.  Doc. 14 at 11-13.  Under the applicable regulations, the Appeals Council will grant review only when it receives new, material, and chronologically relevant evidence and "there is a reasonable probability that the additional evidence would change the outcome of the decision."   20 C.F.R.  §§ 404.970(a)(5), 415.1470(a)(5).  According to the Commissioner, there is no reasonable probability that Dr. Nichols's opinions would change the unfavorable decision because the opinions are inconsistent with Dr. Nichols's own evaluation and other evidence in the record, and are based primarily on Pruitt's subjective reports of symptoms that were essentially the same as those from earlier records the ALJ considered.[8]  Doc. 14 at 11-13.  The court agrees.

Here, Dr. Nichols's opinions regarding Pruitt's mental limitations are largely cumulative of the opinions of Dr. Fleming and Dr. Scarborough.  *See* R. 11-16, 863-66, 1231-32.  Indeed, just like Dr. Nichols, Dr. Fleming opined that Pruitt has major neurocognitive disorder due to traumatic brain injury and recurrent major

---

[8] The Commissioner also contends that Dr. Nichols's opinions would not impact the ALJ's decision because they are on an issue reserved for the Commissioner.  Doc. 14 at 11-13.  Indeed, a statement that a claimant is disabled is not a medical opinion, but a legal determination to be made by the ALJ.   *See* 20 C.F.R. §§ 404.1520b(c)(1)-(3); 416.920(c)(1)-(3).   Still, the Commissioner's contention is unavailing because Dr. Nichols's evaluation and opinions contain more than a simple statement that Pruitt is disabled or cannot work.  *See* R. 1231-32.

depressive disorder.  *See* R. 16, 865.  And, Dr. Scarborough also opined that Pruitt could not maintain attention, concentration, or pace for periods of at least two hours, and could not adjust to routine and infrequent work changes.  *See* R. 11, 1231. Moreover, as the Eleventh Circuit noted in a recent case addressing similar issues, "the evidence that Dr. Nichols cited in her evaluation was the same record evidence already considered by the ALJ and used to determine that [Pruitt] did suffer from severe depression and [lumbar spondylosis]."  *Griffin v. Soc. Sec. Admin., Comm'r*, 842 F. App'x 339, 343-44 (11th Cir. 2021); *see* R. 12-16, 53-59.  Thus, because Dr. Nichols's evaluation and opinions are cumulative of evidence considered by the ALJ, they are not material.  *See Griffin*, 842 F. App'x at 343-44; *Sanders v. Soc. Sec. Admin., Comm'r*, 854 F. App'x 311, 315 (11th Cir. 2021).

To the extent that Dr. Nichols's opinions are not cumulative of other opinion evidence, they are inconsistent with the medical records as a whole for the same reason as Dr. Fleming's and Dr. Scarborough's opinions.  *See* Section V(A)(1), *supra*.  The Eleventh Circuit has found that new medical opinions submitted to the Appeals Council are not material if they are inconsistent with the medical records considered by the ALJ because "there is no reasonable possibility that the new evidence would change the administrative result."  *Hargress*, 883 F.3d at 1310 (citing 20 C.F.R. §§ 404.970(b), 416.1470(b); *Washington*, 806 F.3d at 1320-21).

Thus, because Dr. Nichols's evaluation and opinions are immaterial, the Appeals Council did not err by failing to grant review.

### D.

Finally, Pruitt contends that substantial evidence does not support the ALJ's decision, especially in light of the evidence submitted to the Appeals Council and the ALJ's failure to find that major neurocognitive disorder due to traumatic brain injury is one of Pruitt's severe impairments.  Doc. 10 at 28-30.  As an initial matter, Pruitt does not make any argument or cite evidence or authority to support his contention that the ALJ erred by not considering major neurocognitive disorder a severe impairment.  *See id.*  As a result, he has abandoned the argument, *see Phillips v. Soc. Sec. Admin., Comm'r*, 883 F. App'x 308, 322 (11th Cir. 2020) (quoting *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014)), and has not shown that substantial evidence does not support the ALJ's decision.

Pruitt also contends that substantial evidence does not support the ALJ's decision because the ALJ  rejected the opinions of Dr. Borlaza, Dr. Fleming, and Dr. Scarborough, and because he submitted new evidence, i.e., Dr. Nichols's opinions, that is consistent with the opinions the ALJ rejected.  Doc. 10 at 28-30.  But, as discussed above, the ALJ applied the correct legal standard when she found that Dr. Borlaza's, Dr. Fleming's, and Dr. Scarborough's opinions are not persuasive, and substantial evidence supports her finding.  *See* section V(A), *supra*.

Also, as discussed above, Dr. Nichols's opinions are inconsistent with and rely upon medical records the ALJ considered in reaching her decision.  Section V(C)(2), *supra*.  Therefore, they do not show that the ALJ's decision is not supported by substantial evidence.

## VI.

It is evident that Pruitt believes the evidence supports a contrary finding than the one the ALJ reached.  The court is not tasked, however, with reweighing the evidence, and, if substantial evidence supports the ALJ's decision, it must affirm even if the evidence preponderates against the ALJ's findings.  *Martin*, 894 F.2d at 1529.  For the reasons discussed above, the court concludes that the ALJ's determination that Pruitt is not disabled is supported by substantial evidence, and the ALJ applied proper legal standards in reaching her decision.  Therefore, the Commissioner's final decision is due to be affirmed.  A separate order will be entered.

**DONE** the 30th day of August, 2021.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE